IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| JUAN MENDEZ, SR., Individually and as Representative of the Estate of JUAN MENDEZ, JR., SONIA SANCHEZ HERNANDEZ, CRISTINA PIÑA RODRIGUEZ, Individually and as Next Friend of J.M. and C.M., Minors,<br><br>                               *Plaintiffs*,<br>V.<br><br>TAYLOR POITEVENT and the UNITED STATES OF AMERICA,<br><br>                               *Defendants*. | § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>DR-13-CV-0065-AM-VRG |

## **PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Plaintiffs, Juan Mendez, Sr., Individually and as Representative of the Estate of Juan Mendez, Jr.; Sonia Sanchez Hernandez; and Cristina Piña Rodriguez, Individually and as Next Friend of J.M. and C.M., Minors, and file this *First Amended Complaint*, complaining of Taylor Poitevent (hereinafter "Defendant POITEVENT") and the United States of America (hereinafter "Defendant UNITED STATES") and would respectfully show the Court the following:

### **1. PRELIMINARY STATEMENT**

**1.1** This case stems from the wrongful death of 18 year-old Juan Mendez, Jr. ("Mendez"), a citizen of the United States. Mendez was shot twice in the back and killed by Defendant POITEVENT, an agent of the United States Border Patrol, U.S. Customs and Border Protection agency. At all times, Mendez was unarmed. Mendez was shot in the back, from at least 15 feet away, as he ran *from* Defendant POITEVENT. Mendez had his back to the agent the entire time as

he sought to flee the agent and never once turned back around toward Defendant POITEVENT prior to the agent's discharging his weapon at the teen. Defendant POITEVENT's actions are unjustifiable. Once Mendez fled the agent, he was not a threat to the agent or to any one else. Accordingly, the agent's use of deadly force was unreasonable, reckless and excessive. At all times material hereto, Defendant POITEVENT was acting within the course and scope of his employment as a United States Border Patrol Agent and under color of federal law.

## 2. PARTIES

**2.1** Plaintiff, Juan Mendez, Sr., is the natural father of Juan Mendez, Jr. He brings this action on his own behalf, individually, and also as representative of the Estate of Juan Mendez, Jr. He resides in Eagle Pass, Maverick County, Texas.

**2.2** Plaintiff, Sonia Sanchez Hernandez is the natural mother of Juan Mendez, Jr. She resides in Eagle Pass, Maverick County, Texas.

**2.3** Plaintiff, Cristina Pina Rodriguez was the spouse of Juan Mendez, Jr. She resides in San Antonio, Bexar County, Texas, with her two (2) minor children, J.M. and C.M. She brings this action on her own behalf, individually, and also as next friend of the two (2) minor, who are the biological children of Juan Mendez, Jr.

**2.4** Defendant POITEVENT is an employee of the United States Customs and Border Protection. At all times relevant hereto, he was acting in the course and within the scope of his employment. He is sued in his individual capacity.

**2.5** Defendant UNITED STATES is the government of the United States and is the appropriate defendant under the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq.*, for the tort claims made in this Complaint.

## 3. JURISDICTION

**3.1** Plaintiffs allege violations of the United States Constitution and of civil rights articulated in *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). The Court's jurisdiction over these claims arise from federal questions raised therein. 28 U.S.C. § 1331.

**3.2** Plaintiffs have exhausted their administrative remedies. Pursuant to the Federal Tort Claims Act, Plaintiff filed an administrative complaint with the U.S. Border Patrol, Customs and Border Protection and the United States Department of Homeland Security, which was denied.

**3.3** Pursuant to 28 U.S.C. § 1346, this Court also shall have jurisdiction of civil actions on claims against the United States for money damages for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the course and scope of his or her employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in accordance with the law of the place where the act or omission occurred.

## 4. VENUE

**4.1** Venue is proper in the Western District of Texas pursuant to the general venue statute because federal jurisdiction arises from grounds other than diversity, *i.e.*, federal-question, and further, a substantial part of the events or omissions giving rise to the claim occurred in the Western District. 28 U.S.C. § 1391(b).

## 5. STATEMENT OF CLAIMS

**5.1** Pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), Plaintiffs complain that Defendant POITEVENT used unreasonable and excessive force in shooting and killing Juan Mendez, Jr., in violation of the Fourth and Fifth Amendments to the United States Constitution.

**5.2** Further, Plaintiffs sue the UNITED STATES OF AMERICA (hereinafter "UNITED

STATES") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, for the negligent and wrongful acts and omissions of Defendant POITEVENT, including assault, battery, false arrest and alternatively, for negligence. Specifically, to the extent that Defendant POITEVENT contends he killed Mendez because he was disoriented, weak and discombobulated after his physical altercation with Mendez, Plaintiffs contend Defendant POITEVENT failed to act as a reasonable and prudent person when he shot Mendez from 15 feet away as the teenager fled. Plaintiffs also complain that agents, servants and employees of the UNITED STATES were negligent for failing to adequately train Defendant POITEVENT in the appropriate and measured uses of force and to properly supervise Defendant POITEVENT.

## 6. FACTS

**6.1** At all times material hereto, Defendant POITEVENT was in the course and scope of his employment as a U.S. Border Patrol Agent, U.S. Customs and Border Protection, Homeland Security and acting under color of federal law.

**6.2** Defendant POITEVENT was not properly trained in the appropriate use of lethal force or in the appropriate response to a fleeing, unarmed suspect. Defendant POITEVENT was not properly trained when to shoot and when to *not* shoot in the context of scenarios where the agent could learn to measure his use of force as necessary for the given situations, such as scenarios involving physical struggles and resistance from suspects; or in the absence of verbal commands. Defendant POITEVENT was not properly trained to de-escalate a struggle through the use of less-lethal devices without resorting to deadly force. Defendant POITEVENT was improperly trained by Eugenio Rodriguez, Dean Sinclair, Randy Hill and at least five (5) unknown employees of the U.S. Border Patrol, United States Customs and Border Protection.

**6.3** Defendant POITEVENT was not properly supervised in the appropriate use of lethal

force or in the appropriate response to a fleeing, unarmed suspect. Defendant POITEVENT was not properly supervised in when to shoot and when to *not* shoot in the context of scenarios where the agent could learn to measure his use of force as necessary for the given situations, such as scenarios involving physical struggles and resistance from suspects; or in the absence of verbal commands. Defendant POITEVENT was not properly supervised to ensure he knew to de-escalate a struggle through the use of less-lethal devices without resorting to deadly force. Defendant POITEVENT was improperly supervised by Eugenio Rodriguez, Dean Sinclair, Randy Hill and at least five (5) unknown employees of the U.S. Border Patrol, United States Customs and Border Protection.

**6.4** At all times material hereto, Eugenio Rodriguez, Dean Sinclair, Randy Hill and at least five (5) unknown employees of the U.S. Border Patrol, United States Customs and Border Protection acted within the course and scope of their employment for the United States Border Patrol, U.S. Customs and Border Protection.

**6.5** Mendez was a United States citizen.

**6.6** At approximately 8:15 a.m., on October 5, 2010, Defendant POITEVENT initiated foot pursuit of Mendez and his 15 year-old cousin.

**6.7** Defendant POITEVENT chased the teenagers into a grassy area at the dead end of a cul-de-sac on Wichita Circle, in Eagle Pass, Texas.

**6.8** Mendez's 15 year-old cousin jumped over a fence at the end of the cul-de-sac and got away.

**6.9** Only scrub brush, a vacant lot and the Rio Grande River lay on the other side of the fence.

**6.10** Mendez attempted to follow his cousin over the fence and sought to jump over the fence when Defendant POITEVENT caught up with Mendez and grabbed him by the shirt.

6.11   Defendant POITEVENT pulled Mendez off the fence.

6.12   Mendez struggled with Defendant POITEVENT and sought to flee the agent. At one point, the struggle resulted in Defendant POITEVENT's pulling Mendez's t-shirt off of the teenager.

6.13   Mendez was unarmed.

6.14   Defendant POITEVENT sought to restrain Mendez and used expletives in speaking with Mendez.

6.15   At least one resident of the neighborhood told Defendant POITEVENT that it was unnecessary to speak to Mendez in that manner.

6.16   Defendant POITEVENT told the woman to "stay out of it."

6.17   Defendant POITEVENT restrained Mendez and held him face-down on the grown.

6.18   Defendant POITEVENT put the full weight of his body on top of Mendez and punched Mendez in the back of the head two or three times.

6.19   Mendez stood up and Defendant POITEVENT placed Mendez in a "choke hold," from behind.

6.20   Mendez slipped out of the hold of Defendant POITEVENT by turning around.

6.21   When Mendez slipped out of the agent's "choke hold," Mendez's arm swung around and hit Defendant POITEVENT in the temple with the back of his closed hand.

6.22   Defendant POITEVENT buckled as Mendez attempted to run away from the agent.

6.23   Defendant POITEVENT reached out and grabbed Mendez by the back of the belt as Mendez sought to run away from the agent, in the direction of the fence.

6.24   Mendez tried to run away from Defendant POITEVENT, but the agent held Mendez for several minutes by the back of the belt.

6.25   Mendez slipped out of the agent's grasp and ran away from Defendant POITEVENT,

with his back to the agent the entire time.

**6.26** When Mendez was fifteen (15) feet away from Defendant POITEVENT – and still running toward the fence, *away* from the agent – Defendant POITEVENT unholstered his firearm, pointed it in Mendez's direction and fired twice at the teenager.

**6.27** Mendez had his back to Defendant POITEVENT the entire time as he ran away from the agent.

**6.28** At no point after Mendez began to run from the agent did he ever turn back around toward Defendant POITEVENT.

**6.29** At no point after Mendez began to run from the agent did Defendant POITEVENT ever issue a verbal command that Mendez "stop" or warn Mendez that the agent would shoot the teenager in the back.

**6.30** At the point where Mendez ran from Defendant POITEVENT in the direction of the fence and had gotten 15 feet away from the agent, Mendez was not a threat to Defendant POITEVENT or to anyone else.

**6.31** Defendant POITEVENT shot Mendez twice in the back as the teenager ran from the agent, unarmed.

**6.32** For approximately one minute, Mendez screamed in pain and groaned as he lay face-up on the ground and then he stopped moving.

**6.33** Five minutes later, agents of the U.S. Border Patrol arrived and an agent rolled Mendez onto his stomach and handcuffed him.

**6.34** Mendez was transported to Fort Duncan Medical Center and he died *en route* to the hospital.

**6.35** Mendez experienced conscious pain, suffering and mental anguish prior to his death.

## 7. FIRST CAUSE OF ACTION
*Excessive Force in Violation of the Fourth Amendment*
*to the United States Constitution – Against Defendant POITEVENT*
(*Bivens* Claim)

**7.1** Plaintiffs hereby incorporate by reference each preceding paragraph enumerated above.

**7.2** Defendant POITEVENT acted under color of federal law to deprive Mendez of his right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution by using excessive force against Mendez in shooting and killing him from behind when the teenager was unarmed.

**7.3** Defendant POITEVENT's use of force directly and proximately caused physical and emotional injury to Mendez; and directly and proximately caused his death, for which Plaintiffs now sue. The force used by Defendant POITEVENT was excessive under the circumstances set forth in this Complaint and was objectively unreasonable.

**7.4** This cause of action for the violation of Mendez's Fourth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

## 8. SECOND CAUSE OF ACTION
*Excessive Force in Violation of the Fifth Amendment*
*to the United States Constitution – Against Defendant POITEVENT*
(*Bivens* Claim)

**8.1** Plaintiffs hereby incorporate by reference each preceding paragraph enumerated above.

**8.2** Defendant POITEVENT acted under color of federal law to deprive Mendez of his life without due process of law, as guaranteed by the Fifth Amendment to the United States Constitution by using excessive force against Mendez in shooting and killing him from behind when the teenager was unarmed.

**8.3** Defendant POITEVENT's use of force directly and proximately caused physical and emotional injury to Mendez; and directly and proximately caused his death, for which Plaintiffs now sue. The force used by Defendant POITEVENT was excessive under the circumstances set forth in this Complaint and was reckless.

**8.4** This cause of action for the violation of Mendez's Fourth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

### 9. THIRD CAUSE OF ACTION
*Assault – Against Defendant UNITED STATES*
*(Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.)*

**9.1** Plaintiffs hereby incorporate by reference each preceding paragraph enumerated above.

**9.2** Defendant POITEVENT, in violation of Texas law, intentionally and knowingly caused bodily harm to Mendez by using unlawful force to shoot and kill Mendez on October 5, 2010. Alternatively, Defendant POITEVENT recklessly caused bodily harm to Mendez. These acts constitute assault in the State of Texas. As a direct and proximate result of the wrongful acts and omissions of Defendant POITEVENT, Mendez suffered personal injuries and death, for which Plaintiffs now complain.

**9.3** Defendant POITEVENT committed these acts as an employee of the United States Custom and Border Protection while acting in the scope of his employment: he acted within the scope of his general authority granted to him, in furtherance of his employer's business, and for the accomplishment of the objective for which he was hired.

### 10. FOURTH CAUSE OF ACTION
*Battery – Against Defendant UNITED STATES*
*(Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.)*

**10.1** Plaintiffs hereby incorporate by reference each preceding paragraph enumerated

above.

**10.2** Defendant POITEVENT, in violation of Texas law, intentionally and knowingly caused physical contact with Mendez that he knew, or should have known was offensive and unreasonable. These acts constitute battery in the State of Texas. As a direct and proximate result of the wrongful acts and omissions of Defendant POITEVENT, Mendez suffered personal injuries and death, for which Plaintiffs now complain.

**10.3** Defendant POITEVENT committed these acts as an employee of the United States Custom and Border Protection while acting in the scope of his employment: he acted within the scope of his general authority granted to him, in furtherance of his employer's business, and for the accomplishment of the objective for which he was hired.

### 11. FIFTH CAUSE OF ACTION
*False Arrest/False Imprisonment – Against UNITED STATES*
*(Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.)*

**11.1** Plaintiffs hereby incorporate by reference each preceding paragraph enumerated above.

**11.2** Defendant POITEVENT used unlawful, excessive and deadly force to willfully and forcibly detain Mendez on October 5, 2010, by shooting Mendez twice in the back as he fled on foot, unarmed. This arrest and use of unlawful deadly force were so disproportionate to the circumstances aso as to be considered extreme and outrageous behavior. These actions constitute false arrest in the State of Texas. As a direct and proximate result of the wrongful acts and omissions of Defendant POITEVENT, Mendez suffered personal injuries and death, for which Plaintiffs now complain.

**11.3** Defendant POITEVENT committed these acts as an employee of the United States Custom and Border Protection while acting in the scope of his employment: he acted within the scope of his general authority granted to him, in furtherance of his employer's business, and for the

accomplishment of the objective for which he was hired.

## 12. SIXTH CAUSE OF ACTION
*Negligence on the part of Defendant POITEVENT – Against UNITED STATES*
*(Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.)*

**12.1**   Plaintiffs hereby incorporate by reference each preceding paragraph enumerated above. In the alternative, Plaintiffs allege that Defendant POITEVENT was negligent in commencing and/or continuing foot pursuit of Mendez under the circumstances. Further, Plaintiffs allege in the alternative, that Defendant POITEVENT was negligent in discharging his weapon after the agent had lost visual contact with Mendez, and after the agent had become disoriented, weak and nearly unconscious.

**12.2**   Accordingly, and in the alternative, Plaintiffs allege that Defendant POITEVENT was negligent in:

  (1)   commencing foot pursuit of Mendez when the agent was alone;

  (2)   commencing and/or continuing his foot pursuit of Mendez after the agent had lost radio communication with his supervisors;

  (3)   commencing and/or continuing his foot pursuit of Mendez after the agent had lost visual contact with Mendez;

  (4)   commencing and/or continuing his foot pursuit of Mendez after the agent had become disoriented; and

  (5)   discharging his weapon at Mendez after the agent was disoriented, weak and nearly unconscious.

Plaintiffs urge that the agent's foot pursuit of Mendez and his exercise of lethal force under the circumstances described above constitutes negligence, as set forth in more detail below.

**12.3**   Defendant POITEVENT had a duty *not* to initiate foot pursuit of a suspect when the agent was alone. Plaintiffs contend that at all times material hereto, Defendant POITEVENT was

alone when he initiated and continued his foot pursuit of Mendez. The agent was negligent in commencing foot pursuit of Mendez when the agent was alone, with no support or back-up. Plaintiffs urge that Defendant POITEVENT breached his duty of due care and thereby caused the wrongful death of Mendez. As a direct and proximate result of the negligence of Defendant POITEVENT, Mendez suffered fatal injuries for which Plaintiffs now complain.

**12.4** Defendant POITEVENT had a duty to terminate foot pursuit of Mendez after the agent lost communication with his supervisor and/or the emergency communication center. To the extent that Defendant POITEVENT contends that he lost communication and/or was otherwise prevented from using his radio, Plaintiffs contend that Defendant POITEVENT was negligent in failing to terminate his foot pursuit of Mendez once the agent lost communication. Plaintiffs allege that Defendant POITEVENT breached his duty of due care when he negligently placed himself in a position that resulted in the discharge of his firearm and the wrongful death of Mendez. As a direct and proximate result of the negligence of Defendant POITEVENT, Mendez suffered fatal injuries for which Plaintiffs now complain. Plaintiffs are informed and believe and, therefore, allege that such acts and omissions by Defendant fall within the purview of 28 U.S.C. § 2671, *et seq.*

**12.5** Defendant POITEVENT had a duty to terminate his foot pursuit of Mendez after the agent lost visual contact with Mendez. Accordingly, to the extent that Defendant POITEVENT continued his foot pursuit after the agent "saw black" and had lost visual contact with Mendez, Plaintiffs allege that Defendant POITEVENT was negligent in failing to immediately terminate the foot pursuit. Plaintiffs urge that Defendant POITEVENT breached his duty of due care when he negligently placed himself in a position that resulted in the discharge of his firearm and the wrongful death of Mendez. As a direct and proximate result of the negligence of Defendant POITEVENT, Mendez suffered fatal injuries for which Plaintiffs now complain. Plaintiffs are informed and

believe and, therefore, allege that such acts and omissions by Defendant fall within the purview of 28 U.S.C. § 2671, *et seq.*

**12.6** Defendant POITEVENT had a duty to terminate his foot pursuit of Mendez immediately after the agent had become disoriented. Accordingly, to the extent that Defendant POITEVENT continued his pursuit of Mendez after the agent had become disoriented, "weak," and/or nearly unconscious, Plaintiffs allege that Defendant POITEVENT was negligent in failing to immediately terminate his foot pursuit. Plaintiffs urge that Defendant POITEVENT breached his duty of due care when he negligently placed himself in a position that resulted in the discharge of his firearm and the wrongful death of Mendez. As a direct and proximate result of the negligence of Defendant POITEVENT, Mendez suffered fatal injuries for which Plaintiffs now complain. Plaintiffs are informed and believe and, therefore, allege that such acts and omissions by Defendant fall within the purview of 28 U.S.C. § 2671, *et seq.*

**12.7** Defendant POITEVENT had a duty to act as a reasonable and prudent person and to discharge his weapon only when he had the wherewithal to fairly and soberly assess the threats against him and others. To the extent that Defendant POITEVENT discharged his weapon while the agent was disoriented, weak and "losing consciousness," Plaintiffs allege that Defendant POITEVENT was negligent in discharging his firearm when the agent lacked the capability to accurately judge the threats against him or others. To the extent that Defendant POITEVENT alleges that he perceived that Mendez had turned against him, Plaintiffs allege that the agent was disoriented, weak and nearly unconscious. Defendant POITEVENT was negligent in discharging his firearm in such a compromised mental state. In fact, Mendez was running *away* from the agent, unarmed. Further, Mendez was at least 15 feet away from the agent when Mendez was shot twice in the back. Plaintiffs allege that Defendant POITEVENT was negligent in discharging his weapon

after the agent had become disoriented and when there was no clear justification to do so. As a direct and proximate result of the negligence of Defendant POITEVENT, Mendez suffered fatal injuries for which Plaintiffs now complain. Plaintiffs are informed and believe and, therefore, allege that such acts and omissions by Defendant fall within the purview of 28 U.S.C. § 2671, *et seq.*

### 13. SEVENTH CAUSE OF ACTION
*Negligent Training, Supervision of POITEVENT – Against Defendant UNITED STATES*
*(Federal Tort Claims Act, 28 U.S.C. § 2671,* et seq.*)*

**13.1** Plaintiffs hereby incorporate by reference each preceding paragraph enumerated above.

**13.2** EUGENIO RODRIGUEZ, DEAN SINCLAIR, RANDY HILL and at least five (5) unknown supervisory employees of the U.S. Border Patrol, United States Customs and Border Protection agency were negligent in training and supervising Defendant POITEVENT as set forth below.

**13.3** At all times material hereto, Defendant UNITED STATES had a duty to use ordinary care in the training of its agents, including Defendant POITEVENT. In particular, EUGENIO RODRIGUEZ, DEAN SINCLAIR, RANDY HILL and at least five (5) unknown supervisory employees of the U.S. Border Patrol, United States Customs and Border Protection agency had a duty to train Defendant POITEVENT in the appropriate practices and procedures for foot pursuits of fleeing suspects. Defendant breached these duties by failing to properly train Defendant POITEVENT that foot pursuit is improper if the agent is: (1) alone; (2) has lost radio communication with his supervisors; (3) has lost visual contact with the suspect; or (4) is disoriented. Such breach was a proximate cause of the shooting death of Mendez.

**13.4** EUGENIO RODRIGUEZ, DEAN SINCLAIR, RANDY HILL and at least five (5) unknown supervisory employees of the U.S. Border Patrol, United States Customs and Border

Protection agency also had a duty to train Defendant POITEVENT in the appropriate use of force. These individuals failed to properly train Defendant POITEVENT in the appropriate use of lethal force or in the appropriate response to a fleeing, unarmed suspect. Defendant POITEVENT was not properly trained when to shoot and when to *not* shoot in the context of scenarios where the agent could learn to measure his use of force as necessary for the given situations, such as scenarios involving physical struggles and resistance from suspects; or in the absence of verbal commands. Defendant POITEVENT was not properly trained to de-escalate a struggle through the use of less-lethal devices without resorting to deadly force. The acts and omissions of these employees is a proximate cause of the injuries and damages complained of below.

**13.5** At all times material hereto, Defendant UNITED STATES had a duty to use ordinary care in the supervision of its agents, including Defendant POITEVENT. In particular, EUGENIO RODRIGUEZ, DEAN SINCLAIR, RANDY HILL and at least five (5) unknown supervisory employees of the U.S. Border Patrol, United States Customs and Border Protection agency had a duty to supervise Defendant POITEVENT in his exercise of the practices and procedures for foot pursuits of fleeing suspects. Defendant breached these duties by failing to properly supervise Defendant POITEVENT to ensure that the agent did not initiate foot pursuit when the agent was: (1) alone; (2) had lost radio communication with his supervisors; (3) had lost visual contact with the suspect; or (4) had become disoriented. Defendant's acts and omissions in failing to properly supervise Defendant POITEVENT in the proper procedures for foot pursuit of a fleeing suspect is a proximate cause of the injuries and damages complained of below.

**13.6** At all times material hereto, Defendant UNITED STATES also had a duty to use ordinary care in the supervision of its agents' use of lethal force – and in their agents' understanding of the appropriate times to shoot and not shoot. In particular, EUGENIO RODRIGUEZ, DEAN

SINCLAIR, RANDY HILL and at least five (5) unknown supervisory employees of the U.S. Border Patrol, United States Customs and Border Protection agency had a duty to supervise Defendant POITEVENT and failed to do so here. In particular, these individuals failed to supervise Defendant POITEVENT to his understanding and exercise of the use of force.

**13.7** The acts and omissions of EUGENIO RODRIGUEZ, DEAN SINCLAIR, RANDY HILL and others, are a proximate cause of the injuries and damages complained of here.

## 14. DAMAGES

**14.1** Plaintiffs hereby incorporate by reference each preceding paragraph enumerated above.

**14.2** Plaintiffs sue for compensatory damages sustained as a proximate result of the shooting death of Mendez. In particular, Plaintiffs sue for special damages, which relate to pecuniary losses sustained by Plaintiffs, including lost earnings, medical expenses, and loss of earning capacity. Further, Plaintiffs sue for general damages, including compensation for physical pain, suffering and emotional distress proximately caused by the shooting death of Mendez.

*Wrongful Death*

**14.3** Plaintiffs sue for the wrongful death of Mendez, pursuant to Tex. Civ. Prac. & Rem. Code § 17.002 (Wrongful Death). At the time of his death, Mendez was in reasonably good health with a normal life expectancy.

**14.4** Mendez was a loving and dutiful child and provided reasonable services to his parents. Mendez also provided his parents with joy, happiness and anticipation of all the pleasures that a child can provide to his parents, as well as the anticipation of care, counsel, advice, nurture, guidance and affection both to and for his parents in the future.

**14.5** Mendez was a loving and dutiful spouse and provided reasonable services to his wife.

Mendez also provided his wife with joy, happiness and anticipation of all the pleasures that a husband can provide to his wife, as well as the anticipation of care, counsel, advice, nurture, guidance and affection both to and for his wife in the future.

**14.6** Mendez was a loving and dutiful father and provided care and support to his children. Mendez also provided his children with joy, happiness and anticipation of all the pleasures that a father can provide to his children, as well as the anticipation of care, counsel, advice, nurture, guidance and affection both to and for his parents in the future.

**14.7** As a result of the wrongful death of Mendez, Plaintiffs have suffered damages in the past, including pecuniary loss, loss of companionship, mental anguish and loss of inheritance. Plaintiffs in reasonable probability, will continue to suffer damages in the future as a direct result of the wrongful death of Mendez.

*Survival*

**14.8** Plaintiff Juan Mendez, Sr., as representative of the Estate of Juan Mendez, Jr., sues for survival damages experienced by Mendez, pursuant to Tex. Civ. Prac. & Rem. Code § 71.021 (Survial). Plaintiff seeks damages for the conscious pain and suffering and mental anguish that Mendez endured prior to his death and for the reasonable and necessary medical, funeral and burial expenses, which were reasonably incurred because of the wrongful death.

*Punitive*

**14.9** The act of shooting and killing Mendez from 15 feet away, as he fled unarmed on foot, involved reckless or callous indifference to his Constitutionally protected rights. Accordingly, Plaintiffs demand punitive damages against Defendant POITEVENT for such conduct.

## 15. ATTORNEYS' FEES

**15.1** Pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971), and its progeny, Plaintiffs pray that this Court will assess against Defendant POITEVENT the reasonable and necessary attorneys fees and expenses which Plaintiffs have incurred and will continue to incur during the trial and appeal of this action.

## 16. JURY TRIAL

**16.1** Pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971), and its progeny, and also Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of the claims made against Defendant POITEVENT.

## 17. PRAYER

WHEREFORE, Plaintiffs respectfully pray that Defendants be duly cited to appear and answer herein, and that upon final trial of this case, Plaintiffs recover judgment for:

**17.1** Judgment against Defendant UNITED STATES for compensatory damages as set forth above, as applicable;

**17.2** Judgment against Defendant POITEVENT for compensatory damages as set forth above;

**17.3** Interest on the judgment at the legal rate from date of judgment, as applicable;

**17.4** Costs of court; and

**17.5** Punitive damages against Defendant POITEVENT, in an amount to be determined at trial.

Plaintiffs pray further for such other relief, in law or in equity, to which they may find themselves entitled.

Respectfully submitted,

**BRANTON | HALL | RODRIGUEZ | CRUZ, P.C.**
A PROFESSIONAL CORPORATION OF TRIAL LAWYERS
8100 Broadway
San Antonio, Texas 78209
(210) 224-4474
(210) 224-1928 (fax)

By: _____
SONIA M. RODRIGUEZ
State Bar No. 24008466
JAMES A. HALL
State Bar No. 08758500

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on October 23, 2013, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification to:

JAMES F. GILLIGAN
ZACHARY C. RICHTER

_____
SONIA M. RODRIGUEZ